(80 P.3d 1184)
No. 90,865
No. 90,866

STATE OF KANSAS, *Appellant*, v. ERIC SCHNEIDER, *Appellee.*

—

Opinion filed December 24, 2003.

*Ellen Mitchell*, county attorney, *Bobby J. Hiebert, Jr.*, assistant county attorney, and *Phill Kline*, attorney general, for appellant.

*Roger D. Struble* and *Jim Sweet*, of Salina, for appellee.

Before GREENE, P.J., LEWIS and MALONE, JJ.

GREENE, J.: The State of Kansas filed this interlocutory appeal challenging the district court's order suppressing evidence resulting from a warrantless search incident to a traffic stop. The evidence resulted in the arrests of Eric Schneider and Zachary Ayers, who were charged with drug-related offenses. We affirm the district court.

*Factual and Procedural Overview*

On December 16, 2002, Investigator Gary Hanus of the I-135/ I-70 Drug Task Force received a phone call from Richard Peppers, an in-store protection specialist at a Salina Target store. Peppers reported that he had observed two white males, later identified as defendants Eric Schneider and Zachary Ayers, talking in the cold pill aisle as they each picked up two packages of cold tablets containing pseudoephedrine. One of the males waited outside in a truck after he purchased two packages of cold tablets, while the second male walked around the store and purchased some toys, football cards, and shampoo in addition to the two packages of cold tablets. Peppers observed the second male get into the truck, and the two men left the parking lot together. Peppers advised Hanus of the truck's tag number.

Investigator Jeremy Watkins arrived at the Target store and followed the truck to see if the men were going to any other stores to purchase other ingredients to manufacture methamphetamine. Watkins followed them to a Kwik Shop where he apparently observed no suspicious conduct, and then he continued to follow the truck as it turned northbound on I-135. He observed that the driver of the truck did not use a turn signal in turning north onto I-135, and after communicating this to Investigators Hanus and Burr, the decision was made to call the Salina police department to have a marked vehicle stop the truck. Watkins had observed no other traffic infractions up to this point. Deputy James Fletcher eventually stopped the truck on westbound I-70 some 15 miles beyond Salina and considerably after the signal violation.

Deputy Fletcher made contact with Schneider, the driver of the truck, while Trooper Derric Thompson made contact with Ayers, the passenger. Fletcher informed Schneider that drug task force investigators had observed him fail to use a turn signal, and Schneider and Ayers were both asked to come to the back of the truck to speak with the investigators. Deputy Fletcher did not request Schneider's driver's license, registration, or proof of insurance. When Ayers exited the vehicle, the passenger door remained open. Investigator Watkins testified that Ayers left the door open, while Ayers testified that Trooper Thompson held the door open as he exited the vehicle and prevented him from closing it.

After Schneider agreed to speak with him, Investigator Hanus informed him that he wished to discuss Schneider's purchase of the cold pills. Hanus did not inform Schneider of his *Miranda* rights at this time. Schneider admitted the traffic infraction but stated that he did not have any items associated with a methamphetamine lab. Hanus then asked Schneider for permission for Deputy Fletcher to search the truck for any drugs, drug paraphernalia, or methamphetamine lab-related materials. Schneider refused to give consent to the search.

Deputy Fletcher subsequently advised Investigator Hanus that he observed what appeared to be a gassing generator, an item used in manufacturing methamphetamine, in the pouch of the open passenger door of the truck. Schneider advised Deputy Fletcher that the item was in fact a methamphetamine smoking pipe. Investigator Hanus admitted that had the passenger door not been held open, the officers would not have been able to observe the pipe.

During this time, Ayers agreed to speak with Investigator Watkins, who questioned him about the purchase of the cold pills. Ayers stated that he would not have purchased two boxes of the cold pills if he had known it was illegal. Watkins informed Ayers that it was suspicious but not illegal, and requested consent to search Ayers' person for illegal drugs and weapons, which was given. In conducting the pat-down search, Watkins questioned Ayers about a large lump in Ayers' pocket. Ayers stated that it was money and agreed to let Watkins retrieve it. Watkins reached into

the pocket and pulled out several wadded-up bills and a small baggie of marijuana.

Schneider and Ayers were taken into custody and a subsequent search of the truck yielded drug residue, various items of drug paraphernalia, and other items associated with the manufacture of methamphetamine. Schneider and Ayers were charged with one count each of possession of methamphetamine, contrary to K.S.A. 65-4160; possession of marijuana, contrary to K.S.A. 65-4162; and possession of drug paraphernalia, contrary to K.S.A. 65-4152. Schneider was charged with an additional count of failure to signal a turn, contrary to K.S.A. 8-1721.

Schneider and Ayers filed pretrial motions to suppress, alleging that the officers lacked reasonable suspicion to stop Schneider's truck and that the subsequent detention, search, and seizure were unlawful. At the suppression hearing, the State argued that the officers had sufficient reasonable suspicion to stop the defendants due to the nature of the items they purchased and the manner in which they purchased them. Alternatively, the State argued that even if the officers lacked reasonable suspicion, they conducted a valid traffic stop of the defendants based on the traffic infraction and observed the methamphetamine pipe in plain view.

After hearing evidence, the trial court found that the officers lacked reasonable suspicion to stop the truck based on the purchase of the cold pills. The court noted that even if the defendants were properly stopped for the traffic infraction, their detention was not related to the traffic stop and that without Trooper Thompson's actions, the methamphetamine pipe would not have been in plain view. The court held that the search of the truck was unlawful and suppressed everything found during the search of the truck and any statements made by the defendants as a result of the search. The court held that the marijuana found on Ayers would be admissible.

The State timely filed an interlocutory appeal.

*Standard of Review*

On a motion to suppress evidence, this court reviews the facts underlying the district court's suppression decision by a substantial

competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. Although this court does not reweigh the evidence, the ultimate determination of the suppression of evidence is a legal question requiring the appellate court's independent determination. *State v. Gray*, 270 Kan. 793, 796, 18 P.3d 962 (2001).

*The Traffic Stop, Even if Justified, Was Not Reasonably Related in Scope to the Justifying Circumstances.*

K.S.A. 22-2402(1) provides that "[w]ithout making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions." This statute is a codification of the Fourth Amendment search and seizure principles expressed in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *State v. Field*, 252 Kan. 657, 659, 847 P.2d 1280 (1993). The stop of a moving vehicle always constitutes a seizure; thus, to make such a stop an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402. *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991). The scope and duration of a seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper. *Terry*, 392 U.S. at 19; *State v. Damm*, 246 Kan. 220, 224, 787 P.2d 1185 (1990).

" 'A traffic stop is a seizure within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." [Citation omitted.] An ordinary traffic stop is, however, more analogous to an investigative detention than a custodial arrest. We therefore analyze such stops under the principles pertaining to investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." [Citations omitted.]' " *State v. Mitchell*, 265 Kan. 238, 241, 960 P.2d 200 (1998).

At the outset we question even the pretextual traffic stop, since a significant amount of time passed between the alleged minor

traffic violation and the ultimate stop. For purposes of our analysis, however, we will presume that the stop was appropriate based upon the minor traffic infraction. Although the stop of Schneider's vehicle may have been lawful, the scope of the detention clearly went beyond that which is allowable in conducting a traffic stop.

"A law enforcement officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. . . . In order to justify a temporary detention for questioning, the officer must also have reasonable suspicion of illegal transactions in drugs or of any other serious crime." *Mitchell*, 265 Kan. at 245.

Where the officer conducting a routine traffic stop has no reasonable suspicion that the operator has engaged in criminal activity, the operator is entitled to operate the vehicle and to proceed on his or her way, without being subject to further detention for additional questioning. *Mitchell*, 265 Kan. at 245.

We recognize that after a vehicle is lawfully stopped for a traffic violation, the police officer, even without suspicion of an additional crime, can order the motorist to get out of the vehicle. See *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977). The problem in the present case began once the defendants got out of the vehicle and were questioned about the cold pills rather than the traffic infraction. Schneider was never asked for his driver's license, registration, or proof of insurance, and there was no indication that the officers planned to issue Schneider a citation for failure to signal. The officers' conversations with the defendants related almost entirely to their purchase of the cold pills, whereas the only arguable lawful reason the officers had to stop Schneider's truck was based on the traffic infraction.

In the absence of reasonable suspicion of criminal activity unrelated to the circumstances of the pretextual traffic stop, further detention and search was unreasonable.

*The Officer's Knowledge of Recent Cold Pill Purchases Was Legally Inadequate to Form a Reasonable Suspicion of Criminal Activity.*

The State contends that the search was reasonable because the information previously relayed to Investigator Hanus regarding the defendants' behavior and purchase of the cold pills was sufficient

to constitute reasonable suspicion of criminal activity, based on Hanus' training and experience. The district court rejected this contention, commenting:

"I'm finding it just a little bit difficult to find articulable suspicion that a crime was being committed or about to be committed based on the fact that two different people each purchased two packages of cold pills in the context of at least one of them purchasing other personal items. Frankly I find that a little scary; that that contact or that that circumstance would create an articulable suspicion that this perfectly legal transaction was being done for an illegal purpose."

While it is a crime under K.S.A. 65-7006(a) to possess ephedrine or pseudoephedrine with the intent to use it to manufacture a controlled substance, the defendants' purchase of the cold pills alone is not sufficient to constitute reasonable suspicion that they intended to commit a crime. While this court has held that possession of two individually innocuous items could be deemed drug paraphernalia when considering that the two items were found in the same bag at the same time, *State v. Daniels*, 28 Kan. App. 2d 364, 370, 17 P.3d 373 (2000), *rev. denied* 272 Kan. 1420 (2001), this court has never held that the mere purchase and possession of two packages of cold pills containing pseudoephedrine is sufficient evidence to infer criminal intent. We agree with the district court in finding the State's position "a little scary."

Neither of the defendants purchased any additional items associated with the manufacture of methamphetamine, and the fact that two defendants purchased the cold pills at the same store does not provide any basis to support the inference that the defendants intended to use them to manufacture methamphetamine. Officer testimony in the record stating that the officers were "looking for a traffic infraction," indicates that they initially believed that they could not conduct a stop based solely on the information about the cold pills. They were correct.

*The Search Was Not Permissible Based On the Theory of Inevitable Discovery.*

The State also contends that the officers would have been able to search the vehicle based on the theory of inevitable discovery after marijuana was found on Ayers.

"Evidence obtained unlawfully in violation of a defendant's constitutional rights is admissible under the inevitable discovery exception to the exclusionary rule where the prosecution can prove by a preponderance of the evidence that the unlawfully obtained evidence would have ultimately or inevitably been discovered by lawful means." *State v. Waddell*, 14 Kan. App. 2d 129, Syl. ¶ 4, 784 P.2d 381 (1989).

The State's inevitable discovery argument would have merit if the officers had questioned the defendants solely about the traffic infraction prior to the marijuana being found in Ayers' pocket. Similarly, if the officers had observed the meth-amphetamine pipe in plain view as the defendants exited the vehicle, prior to being questioned about the cold pills, the subsequent search of the vehicle would likely be justified by the plain view exception to the search warrant requirement. These are not the facts present here. The testimony at the suppression hearing indicates that Ayers was searched after being questioned about the cold pills and that Deputy Fletcher observed the pipe *after* the nature of the detention had become unlawful. Moreover, the trial court appeared to believe Ayers' testimony that he tried to close the truck door, but Trooper Thompson prevented him from doing so. The pipe would not have been in plain view absent the officer's conduct.

When the officers began to question the defendants about the cold pills, it clearly changed the nature of the detention, exceeding that which is permissible for a traffic stop, and the legal purpose of the stop, the traffic violation, was largely ignored. Because the stop became unlawful as soon as the officers began questioning the defendants about the cold pills, it is irrelevant whether the passenger door was left open by law enforcement or by defendant Ayers. Once a traffic stop has become an unlawful detention, evidence thereafter discovered is not admissible based on the inevitable discovery exception. The trial court properly granted the defendants' motions to suppress.

Affirmed.