(129 P.3d 641)

No. 93,162

STATE OF KANSAS, *Appellee*, v. LARRY A. POAGE, JR., *Appellant*.

Opinion filed March 10, 2006.

*Sarah Ellen Johnson*, assistant appellate defender, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before ELLIOTT, P.J., GREEN and GREENE, JJ.

GREENE, J.: Larry A. Poage, Jr. appeals his conviction for attempted possession of precursors with the intent to distribute in contravention of K.S.A. 21-3301 and K.S.A. 65-7006(b). He challenges the district court's denial of his motion to suppress and the sufficiency of the evidence to support his conviction. We affirm.

*Factual and Procedural Background*

On March 26, 2002, an Olathe police officer working the midnight shift received a call from dispatch at approximately 3 a.m. reporting that a clerk at a convenience store had "advised that someone was trying to buy a large quantity of matches, the matchbook type." The officer proceeded immediately to the convenience store and interviewed the clerk, who told him that this person had purchased two large boxes of matchbooks containing a total of 100 matchbooks (approximately 2,000 individual matches), and "had been doing that for several months." She also told the officer that this person tried to buy two more boxes from her, but she refused to sell them due to a policy limiting sales to two boxes per customer. Despite this refusal, the person returned to the store after taking the first two boxes to his vehicle and attempted once again to buy more matchbooks, but she refused to sell them and called dispatch,

providing a description and a license plate number, which proved to be registered in Linn County. Finally, the clerk advised the officer that during the person's visit to the store, he picked up a bottle of "Heet" fuel additive and looked at it but returned it to the shelf.

Based upon this information, the officer decided to call another nearby convenience store to see if this person had made similar purchases there. Indeed, the nearby store reported that a person in a vehicle matching the description had just "tried to purchase or did purchase matches." Based upon this information, the officer radioed another officer believed to be in the area of the second store, gave him the vehicle description and tag number, and asked him to watch for the vehicle "hoping that the vehicle would be headed back towards Paola." The second officer was told that he was to stop the vehicle if he saw it.

At approximately 3:30 a.m., the second officer spotted a vehicle matching the description with a tag number only one digit off the number provided by the clerk. He followed the vehicle, observed the vehicle pull into a gas station and the driver go into a restroom, and then stopped the vehicle. He approached the driver, ran a check on his license, and determined that his license was suspended. By this time the initial officer joined the second officer at the scene of the stop and placed Poage under arrest. The vehicle was towed and during an inventory search the following items were noted: 21 extremely small bottles of iodine, 12 boxes of matchbooks—each containing 50 books, empty boxes of cold and allergy medications, 4 bottles of Heet fuel additive, a gallon container of camp fuel, 6 boxes of Equate antihistamine tabs, 118 "red tablets," various receipts, and a rifle.

Upon questioning, Poage admitted that "he was basically driving around town purchasing items for a gentleman named Steve or Steven and that . . . Steve was going to use those items to manufacture methamphetamine." On March 27, 2002, the State charged Poage with possession of pseudoephedrine, ephedrine, or phenylpropanolamine with the intent to use the product as a precursor to any illegal substance, to wit: methamphetamine, and unlawfully driving a vehicle with a suspended license.

On March 5, 2003, Poage filed a motion to suppress. In its ruling from the bench, the district court recited the salient facts and then stated:

"I think those things taken together establish a reasonable articulable suspicion that a crime was afoot and that's really the only issue here is whether or not there was any probable cause to stop Mr. Poage in the first place. Once he was stopped there were lots of methamphetamine ingredient in his possession and he quickly volunteered that that was the purpose of having them, so that meandering summary of the facts lead me to believe that the motion to suppress should be denied."

Following a bench trial and the court's denial of his motion for acquittal, Poage was found guilty and sentenced to 30 months' imprisonment. He appeals.

*Did the District Court Err in Denying Poage's Motion to Suppress?*

We review the district court's ruling on the motion to suppress to determine if the facts relied upon are supported by substantial competent evidence, but we review the ultimate legal conclusion de novo. *State v. DeMarco*, 263 Kan. 727, 732, 952 P.2d 1276 (1998). Although we will not reweigh the evidence, the ultimate determination of the suppression of evidence is a legal question requiring our independent determination. *State v. Gray*, 270 Kan. 793, 796, 18 P.3d 962 (2001).

Poage concedes that the facts in this case are not in dispute, and the State apparently agrees. We note at the outset, however, that the district court erred in its reference to and apparent reliance on contraband recovered in Poage's possession *after* the stop. In determining whether the officers had reasonable suspicion that the defendant was committing, about to commit, or had previously committed a crime, our focus is exclusively on the officer's knowledge of facts at the moment of the stop or seizure. *State v. Guy*, 242 Kan. 840, 843, 752 P.2d 119 (1988).

Poage also implicitly concedes that in focusing on the facts purportedly supporting reasonable suspicion, we must consider not only those facts known independently by the officer executing the stop, but all of the facts known collectively by those involved in the investigation. In other words, we must examine the facts known

not only to the second officer but those known to the first officer as well.

"In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction.

" '[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.' " *United States v. Hensley*, 469 U.S. 221, 231, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985).

Reasonable suspicion of criminal activity to justify an investigatory detention must be evaluated by examining the totality of the circumstances in light of common sense and ordinary human experience. Reasonable suspicion represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence. *State v. Toothman*, 267 Kan. 412, Syl. ¶ 4, 985 P.2d 701 (1999). Kansas courts have recognized that the location, time of day, previous reports of crime in the area, and furtive actions of suspects may well justify a stop. *State v. Maybin*, 27 Kan. App. 2d 189, 201, 2 P.3d 179, *rev. denied*, 269 Kan. 938 (2000). Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, but both are dependent upon the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are to be considered in examining the totality of the circumstances. *State v. Slater*, 267 Kan. 694, 697, 986 P.2d 1038 (1999).

Poage argues that "buying matches cannot be considered sufficient justification to stop a car." We agree with this proposition, but it does not encompass the true question before us. The officers understood that the matchbooks being purchased by Poage had red phosphorus strike plates that are preferred in one method of manufacturing methamphetamine. Poage did not merely "buy matches" but rather manifested a vigorous crusade to "stock up" on an unusual quantity of matchbooks. He was initially reported

by a reliable source to have purchased large quantities of match-books at the same store on numerous occasions "for several months." On the occasion of his stop and seizure, he was reported to have purchased not one box, but two, at the first store, and he attempted twice to purchase at least two more boxes *at that store*. Not satisfied with his purchase of at least 100 matchbooks, he then proceeded to another store in apparent furtherance of his crusade. Considering as well that he made these purchases and attempted purchases in a county other than his own (considering his county of vehicle registration), that he examined or considered for purchase a bottle of "Heet" fuel additive also known to be used in manufacturing methamphetamine, and that all these activities occurred between approximately 3 and 3:30 a.m., we conclude that the officers had reasonable suspicion that Poage may have been involved in criminal activity.

Poage argues that any conclusion of reasonable suspicion here could not be squared with our decisions in *State v. Schneider*, 32 Kan. App. 2d 258, 80 P.3d 1184 (2003), and *State v. Knight*, 33 Kan. App. 2d 325, 104 P.3d 403 (2004). We disagree and distinguish these cases.

In *Schneider*, we held that the mere purchase and possession of two packages of cold pills containing pseudoephedrine is not sufficient evidence to infer criminal intent. We noted in our opinion, however, that possession of two individually innocuous items *could* be deemed drug paraphernalia when considering that the two items were found in the same bag at the same time, citing *State v. Daniels*, 28 Kan. App. 2d 364, 370, 17 P.3d 373 (2000), *rev denied* 272 Kan. 1420 (2001). *Schneider*, 32 Kan. App. 2d at 264. Moreover, in *Schneider* there was no reliable report of a pattern of such activity by the defendant, there were no attempts at multiple purchases, at more than a single store, at locations beyond the purchaser's apparent home county, at odd hours of the night, or coupled with examination and consideration for purchase of a second material known to be used in manufacturing methamphetamine. Finally, it is not difficult to conceive innocent motivations for the purchase of two boxes of cold pills; it is far more difficult to con-

ceive innocent motivations for the crusade to purchase several hundred matchbooks in the middle of the night.

In *Knight*, a panel of our court held that "the mere purchase of two boxes of cold pills, a six-pack of bottled water, and table salt does not, standing alone, constitute the basis for reasonable suspicion." 33 Kan. App. 2d 325, Syl. ¶ 4. Key to this holding is the phrase "standing alone." Again, there was no reliable report of a pattern of such activity, there were no attempts at multiple purchases of suspicious ingredients, at more than a single store, at locations beyond the purchaser's apparent home county, at odd hours of the night, or coupled with examination and consideration for purchase of a second material known to be used in manufacturing methamphetamine.

In *Knight* as in *Schneider*, an examination of the totality of the circumstances did not meet the threshold of reasonable suspicion. Here, the totality of the circumstances, including the numerous attempts at more than one location to consummate these purchases, the quantity of materials purchased or attempted to be purchased, the reliable information that this was a pattern of activity for this defendant extending for several months, the examination or consideration for purchase of a second material known to be used in manufacturing methamphetamine, the location of the purchases relative to the defendant's apparent home, and the odd hours of purchase—in the middle of the night—cause us to resolve the question on these facts against Poage and in favor of the State.

We conclude that the officers had reasonable suspicion from the facts known to them collectively at the time of the stop that Poage may have been engaged in criminal activity. The district court did not err in denying Poage's motion to suppress.

*Was there Sufficient Evidence to Support Poage's Conviction?*

Poage was ultimately charged and convicted under K.S.A. 65-7006(b), which provides:

"It shall be unlawful for any person to market, sell, distribute, advertise, or label any drug product containing ephedrine, pseudoephedrine, red phosphorus, lithium metal, sodium metal, iodine, anhydrous ammonia, pressurized ammonia or phenylpropanolamine, or their salts, isomers or salts of isomers if the person knows

or reasonably should know that the purchaser will use the product to manufacture a controlled substance."

On appeal, Poage argues he was the *purchaser* so he should not have been charged under this section and that the evidence was insufficient to sustain his conviction.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

The evidence showed Poage bought iodine, antihistamine tablets, and other goods to give, distribute, or resell to "Steve" who was reported to be manufacturing methamphetamine with the goods provided by Poage. These statements came into evidence through Officer Alton's testimony describing Poage's own statements during the interview after the arrest. Poage readily admitted he knew "Steve" manufactured methamphetamine.

Viewing the evidence in the light most favorable to the State, a rational factfinder could find Poage guilty of violating K.S.A. 65-7006(b) beyond a reasonable doubt.

Affirmed.