No. 80,145

STATE OF KANSAS, *Appellant*, v. VICTOR MITCHELL, *Appellee.*
(960 P.2d 200)

Opinion filed May 29, 1998.

*Leo T. Gensweider*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*E. Jay Greeno*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: A motorist was stopped for speeding. After a police officer had information necessary to issue a citation, he questioned the motorist about drug usage and requested permission to search his pickup truck. The motorist denied the officer permission to search the truck. The officer informed the motorist that because

he did not consent to a search, a drug-sniffing dog would be brought to the scene. If the dog sniffed drugs, the vehicle would then be searched without the motorist's consent. The motorist then capitulated and agreed to a search. The district court suppressed evidence found during the search, and the State appealed.

The facts are undisputed. The Yates Center police officer videotaped the encounter when Victor Mitchell was stopped for speeding. At 10:36 p.m. on June 26, 1997, Mitchell was stopped for travelling 59 mph in a 45 mph zone. Mitchell had his 13-year-old daughter with him who was visiting for the summer and had been with her father for 2 days.

While Mitchell was retrieving his driver's license and auto insurance information, the officer looked through Mitchell's window with a flashlight. The officer then told Mitchell to follow him to the rear of the truck. During the suppression hearing the officer testified he was "investigating something above and beyond the fact that the vehicle had been stopped for speeding." While waiting for information from the dispatcher regarding Mitchell's driver's license, the officer began questioning Mitchell.

The officer asked Mitchell if he had ever been arrested. Four minutes after the stop, the dispatcher indicated that Mitchell's license was valid and there were no outstanding warrants. The officer then showed Mitchell the radar display. Instead of writing a traffic citation, the officer began to question Mitchell about prior drug offenses. Mitchell admitted that he had in the past smoked marijuana. The officer asked whether Mitchell still smoked marijuana. When Mitchell denied doing so, the officer asked Mitchell if he was transporting any illegal drugs. Mitchell said no. The officer stated, "Having that in mind, you wouldn't mind giving me permission to search the vehicle, then would you?"

Mitchell refused to give the officer permission to search the truck. The officer then informed Mitchell he would call for the drug-sniffing dog and if the dog "hits" on the truck, the officer would search Mitchell's vehicle without permission. He continued, "The process would be a lot easier if you've got something, you've got your daughter with you." Mitchell finally admitted he had some joints and agreed to retrieve them for the officer. The officer took

possession of the alleged marijuana, informed Mitchell of his *Miranda* rights, and searched the truck. All of this took place in 13 minutes. Mitchell produced the marijuana to the officer approximately 7 minutes after being stopped.

Mitchell was charged with felony possession of marijuana. After Mitchell's arrest, the officer took the daughter into custody and back to the police station to arrange for her transportation back to her mother.

Mitchell moved to suppress the marijuana and all statements made during the stop. At the conclusion of the suppression hearing, the district judge granted Mitchell's motion to suppress.

The judge's decision was made during Mitchell's cross-examination of the State's first witness based upon the videotape of the stop. Mitchell's counsel had asked the police officer whether he was investigating other crimes during the stop. The officer responded that he was. The county attorney objected, stating, "Your Honor, I'm going to object. You've got the video. I don't know what more you can need. Whatever his thought process was is not material to a suppression. Even if he thought the person was in custody, that ain't the case law test." The district judge responded, "Well, I'm usually not the kind that wants to cut something artificially short, but if you want to use the test as being the tape, I'll grant the Motion to Suppress." The timing of the district judge's ruling and the explicit statement indicate the district judge ruled the officer did not have any cause to continue Mitchell's detention longer than necessary to write a traffic citation.

The State filed an interlocutory appeal, claiming (1) the district court erred in finding the officer exceeded his authority in detaining and questioning Mitchell during a routine traffic stop; (2) the taint of an illegal search was removed by Mitchell's voluntary statement and consent; (3) there was no violation of *Miranda*; (4) Mitchell's consent to search the vehicle was free and voluntary; (5) Mitchell's incriminating statement was voluntary; and (6) Mitchell or his vehicle was not illegally seized.

We accepted the case pursuant to K.S.A. 20-3018(c).

## DISCUSSION:

An appellate court will uphold a trial court's suppression of evidence if that ruling is supported by substantial competent evidence. *State v. Vandiver*, 257 Kan. 53, Syl. ¶ 5, 891 P.2d 350 (1995); see generally *State v. Griffin*, 246 Kan. 320, 787 P.2d 701 (1990) (general discussion of suppression of evidence and State's interlocutory appeal from adverse rulings).

"A traffic stop is a seizure within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.' [Citation omitted.] An ordinary traffic stop is, however, more analogous to an investigative detention than a custodial arrest. We therefore analyze such stops under the principles pertaining to investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' [Citations omitted.]" *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995).

The State argues that the officer's questioning of Mitchell lasted only 5½ minutes. Of that time, 3 minutes and 50 seconds were spent obtaining driver's license information from dispatch. An additional 20 seconds was spent showing Mitchell the radar speed readout. According to the State, this left "the officer approximately one minute and twenty seconds to write out the speeding citation." Consequently, defendant was stopped no longer than it would normally take to issue a citation.

However, a review of the videotape shows that the officer was *not* writing a citation during the time Mitchell was stopped. Instead, after the officer had obtained sufficient information to issue the traffic citation, he questioned Mitchell about whether he used or was carrying marijuana. Additionally, the officer informed Mitchell that if he did not consent to a search, Mitchell would be detained until a drug-sniffing dog arrived and if the dog detected drugs in Mitchell's vehicle, the officer would then search the vehicle regardless of Mitchell's consent.

Both the State and Mitchell rely upon *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993), and *United States v. Walker*, 933

F.2d 812 (10th Cir. 1991). Therefore, a review of these cases is appropriate. In *Shabazz*, defendant was stopped for speeding. There was a passenger in the car. The officers asked Shabazz to come to the rear of the vehicle with his driver's license. While one officer was running Shabazz' driver's license, he questioned Shabazz. The other officer questioned the passenger, Parker. Parker seemed nervous. The officers then compared notes and discovered the two individuals had given conflicting stories regarding their recent whereabouts. Based on all of this information, the officers sought consent to search the automobile. Parker, who owned the automobile, consented to the search. The search seized a significant amount of crack and cocaine.

In reviewing the district court's denial of Shabazz' motion to suppress, the *Shabazz* court analyzed whether the stop exceeded what is permissible under the Fourth Amendment. The *Shabazz* court recognized that the United States Supreme Court has used *Terry v. Ohio*, 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), to analyze cases where individuals were stopped for traffic violations. The *Shabazz* court observed that under *Terry*, the judicial inquiry into the reasonableness of a search or seizure is whether it was reasonably related in scope to the circumstances which justified the interference in the first place. 993 F.2d at 435.

Shabazz had argued that by questioning him and Parker about their whereabouts, the officers violated the second prong of the test; specifically, the questioning exceeded the reasonable scope of the stop's original purpose. For this assertion, Shabazz relied upon *United States v. Guzman*, 864 F.2d 1512 (10th Cir. 1988). There, a policeman, after concluding Guzman's registration and driver's license were in order, did not write a citation or give a warning. Rather, the officer began questioning the driver as to his travel. The *Guzman* court stated an officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way without being subject to further delay by police for additional questioning. In order to justify a temporary detention for questioning, the officer must

also have reasonable suspicion of illegal transactions in drugs or of any other serious crime. 864 F.2d at 1519.

The *Shabazz* court stated that police officers could question those they stopped for traffic violations on matters unrelated to the stop because *Terry* concerns the *scope* of lawful detention or seizures, not police questioning where there is no unlawful seizure. 993 F.2d at 436. As an example, the *Shabazz* court used a hypothetical where the police stopped a man for suspicion of carrying a gun. It noted that after patting the man down and finding no gun, the police could not then question him about an unrelated crime. "This is not because the questioning itself is unlawful, but because at that point suspicion of weapons possession has evaporated and no longer justifies further detention." 993 F.2d at 436.

The *Shabazz* court determined the stop of the defendant was not a violation of the *Terry* doctrine because the questioning took place while the officers were waiting for the driver's license check to be completed by dispatch. Therefore, the length of Shabazz' detention was unaffected by the questioning. 993 F.2d at 437.

In *United States v. Walker*, 933 F.2d 812, Walker was stopped for speeding. Prior to getting out of his car, the police officer ran a National Crime Information Center check and determined that the car had not been stolen. The officer then approached Walker's car and asked for his driver's license. While holding Walker's license and registration, the officer asked Walker a number of questions. Walker answered the questions. While retaining possession of Walker's license and registration, the police officer asked permission to search Walker's car. At this point, the officer had not begun to write a citation or warning for speeding. Walker's consent to the search resulted in the officer discovering 86 kilograms of cocaine in the vehicle. The district court suppressed the evidence seized.

The government argued that the questioning and consent were consensual and that consensual encounters are not governed by the Fourth Amendment. The *Walker* court considered whether the search of the car was justified by the defendant's consent to the search. The *Walker* court noted that the 10th Circuit had frequently held the Fourth Amendment ban on unreasonable

searches does not prohibit asking questions of an individual during a consensual encounter. 933 F.2d at 817. However, under the circumstances, Walker was not free to leave. Therefore, the resulting search was not consensual. The *Walker* court affirmed the district court's suppression of the cocaine because the defendant had produced sufficient proof showing he was entitled to operate the car such that no reasonable suspicion of criminal activity arose. 933 F.2d at 816.

Here, after receiving information that Mitchell was authorized to drive and the vehicle was his, the officer did not write a citation or issue a warning. Instead, the officer continued to question Mitchell about things that were wholly unrelated to the stop. It was at the conclusion of the questioning that the officer sought consent to search Mitchell's vehicle. Unlike the defendants in *Shabazz* and *Walker*, Mitchell refused to consent to the search. The officer then told Mitchell that he (the officer) would get a drug-sniffing dog and if the dog "hit" on the car, he would search regardless of whether Mitchell consented.

It is difficult to understand why the State believes *Walker* and *Shabazz* support its position. Both cases stand for the proposition that during the time it takes to insure the driver has no warrants and the car is not stolen, the officer may question the person pulled over. Similarly, both cases prohibit detention lasting longer than is required for the above. Here, as in *Walker*, the police officer continued the interrogation after he had the information he needed for the stop. These facts are even more compelling than those in *Walker* because, after Mitchell had refused the officer's consent to search, the officer threatened to call for a drug-sniffing dog in an attempt to coerce Mitchell to consent to the search.

The State asserts that Mitchell was detained only a few minutes before he admitted to the officer there was marijuana in the vehicle; thus, the detention was not unreasonable. However, this argument was rejected in *United States v. Guzman*, 864 F.2d 1512. The *Guzman* court wrote:

"The Government stresses that this traffic stop took less than fifteen minutes. As the Supreme Court made clear in *United States v. Sharpe*, 470 U.S. 675, 685-87, 105 S. Ct. 1568, 1574-76, 84 L. Ed. 2d 605 (1985), the basis for and the

circumstances surrounding the stop, rather than an arbitrary time limit, govern the stop's permissible length. Although the stop in this case may well have been of short duration, it nevertheless unreasonably extended beyond the length necessary for its only legitimate purpose—the issuance of a warning or citation for a seat belt violation." 864 F.2d at 1519 n.8.

Under the reasoning of *Shabazz, Guzman,* and *Walker,* there is no doubt that the detention here violated Mitchell's Fourth Amendment rights to be free from unlawful seizures.

The State next argues that even if Mitchell had been illegally seized, the voluntariness of his statement and his consent removed the taint of the illegal seizure. In support of this argument the State asserts: "The fact that the Defendant may have surrendered when he should have stood his ground, does not make his admission to the existence of the joints any less voluntary."

This argument was not raised at the trial court level. "[A] new legal theory may not be asserted for the first time on appeal or raised in a reply brief." *Bolyard v. Kansas Dept. of SRS,* 259 Kan. 447, 455, 912 P.2d 729 (1996) (citing *Sharp v. State,* 245 Kan. 749, 753, 783 P.2d 343 [1989], *cert. denied* 498 U.S. 822 [1990]).

A law enforcement officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he or she is entitled to operate the car, the driver must be allowed to proceed on his or her way, without being subject to further delay by the officer for additional questioning. In order to justify a temporary detention for questioning, the officer must also have reasonable suspicion of illegal transactions in drugs or of any other serious crime. Here, the officer had no reasonable suspicion that Mitchell had drugs or a suspicion of any crime other than the traffic infraction. Mitchell was entitled to operate the vehicle and to proceed on his way, without being subject to further detention for additional questioning.

Affirmed.