NOT DESIGNATED FOR PUBLICATION

No. 120,998

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DYLAN M. STEINLAGE,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Nemaha District Court; JAMES A. PATTON, judge. Opinion filed March 13, 2020.
Affirmed.

*William C. O'Keefe*, of O'Keefe Law Office, of Seneca, for appellant.

*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.


Before HILL, P.J., GREEN and WARNER, JJ.


PER CURIAM: Dylan Steinlage's driver's license was administratively suspended after he failed a breath test. He now appeals, arguing the sheriff's deputy did not have reasonable suspicion to believe he had operated a vehicle under the influence of alcohol and thus did not have authority to request the test. Steinlage argues there are innocent explanations for his slurred speech and imbalance—the evidence the deputy relied on to demonstrate his intoxication. He also asserts that various other factors tending to show intoxication were absent from the record here. This court's standard of review, combined with the uncontroverted evidence, leads us to affirm the district court's decision.

1

FACTUAL AND PROCEDURAL BACKGROUND

The weather in rural Nemaha County was inhospitable in the early morning hours of April 15, 2018. The thermometer registered 25 degrees while winds blew at 20 to 30 miles per hour. At approximately 2:30 a.m., Deputy Douglas Dalinghaus of the Nemaha County Sheriff's Department responded to a call from a farmer about a car accident. Upon arriving, Dalinghaus found a vehicle overturned in a field, but the driver was not at the scene. With the driver missing, the deputy helped the fire department search the surrounding area; he later learned another deputy found alcohol containers surrounding the vehicle. Dalinghaus later testified he could not remember whether the deputy told him the containers were open.

While investigating the scene, the sheriff's department learned Steinlage had been the driver. The sheriff's department called Steinlage's parents and informed them of the accident; at that time, they did not know where he was. But the parents later found him and took him home, learning he had walked away from the accident toward their house.

Deputy Dalinghaus and another deputy left the accident scene and went to Steinlage's parents' house, where Dalinghaus met with Steinlage. Steinlage was dirty and had blood on his jeans, so the deputy allowed him a few minutes to change and freshen up. They then talked about the accident.

Steinlage explained he had a "problem" driving, and the vehicle overturned. Although Steinlage stated he had not been drinking, Dalinghaus noticed he was "a little unsteady" on his feet and his speech was "a little slurred." These observations, coupled with the knowledge of the accident, the alcohol containers surrounding the car, the time of the accident (around 2 a.m.), and Steinlage's strange behavior of leaving the accident and walking home in the freezing temperatures, led Dalinghaus to believe he had been driving impaired.

2

Because Steinlage had been out walking in the cold, Dalinghaus did not request him to undergo the standard field sobriety tests. Instead, he asked Steinlage to perform a preliminary breath test. Steinlage did so. The breath test showed a blood alcohol concentration over 0.08. Dalinghaus then took him to the sheriff's department for further testing. A subsequent Intoxilyzer breath test showed an alcohol concentration of 0.207. Dalinghaus certified these results using a DC-27 and provided Steinlage a notice that his license would be suspended.

Steinlage challenged his suspension through an administrative hearing. After considering the evidence, the hearing officer determined Steinlage had not shown Deputy Dalinghaus lacked reasonable suspicion Steinlage had been driving while under the influence of alcohol. Steinlage then petitioned the district court to review the hearing officer's decision, and the district court found the deputy had reasonable suspicion to request the breath test and affirmed the suspension. Steinlage appeals.

DISCUSSION

Appellate courts considering license-suspension decisions employ a mixed standard of review, depending on the nature of the questions presented. We review the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 466, 447 P.3d 959 (2019). Substantial competent evidence is relevant and substantive evidence that furnishes a sufficient basis of fact to reasonably resolve the issues in the case. In evaluating whether such evidence existed before the district court, we do not reevaluate the credibility of witnesses, redetermine questions of fact, or reweigh evidence in conflict. 310 Kan. at 469.

K.S.A. 2017 Supp. 8-1012(b), now codified at K.S.A. 2019 Supp. 8-1012(a), permits an officer to request a preliminary breath test when the officer has reasonable suspicion the driver has operated a vehicle while under the influence of alcohol. Reasonable suspicion requires more than a mere hunch; an officer must articulate the reasons justifying an action. *State v. Jones*, 47 Kan. App. 2d 866, Syl. ¶ 6, 280 P.3d 824 (2012), *aff'd* 300 Kan. 630, 333 P.3d 886 (2014). Whether reasonable suspicion exists is a question of law and depends on the totality of the circumstances. 47 Kan. App. 2d 866, Syl. ¶ 2. No one factor dominates the inquiry; the quantity of the evidence must be weighed against its quality. 47 Kan. App. 2d 866, Syl. ¶ 6.

Steinlage attempts to discredit the district court's conclusion by pointing to the absence of various facts here that in other circumstances would indicate impairment. For example, he emphasizes that the deputy did not smell alcohol on Steinlage before requesting the preliminary breath test. And he notes that although alcoholic containers were found around Steinlage's vehicle at the accident scene, the deputy testified he could not recall whether those containers were open. Steinlage also argues that there are innocent explanations for the factors the court found persuasive of impairment. He claims that although he was unsteady and slurred his speech, these could have resulted from his prolonged exposure to freezing temperatures, not from his alcohol consumption.

Steinlage correctly notes the odor of alcohol can be an important factor when developing reasonable suspicion. See *State v. Pollman*, 286 Kan. 881, 895-96, 190 P.3d 234 (2008) (collecting cases). But an officer may form reasonable suspicion absent the odor of alcohol when other factors indicate intoxication. See *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 416, 233 P.3d 286 (2010) (independent of odor of alcohol, facts of the car accident may suggest impairment, satisfying reasonable grounds); *Hanchett v. Kansas Dept. of Revenue*, No. 115,579, 2016 WL 6822802, at *3 (Kan. App. 2016) (unpublished opinion) (collecting cases indicating lateness of hour may create inference of intoxication); *State v. Spoon*, No. 91,013, 2004 WL 1176688, at *2

(Kan. App. 2004) (unpublished opinion) (leaving scene of an accident and belief that defendant's difficulty moving was a result of intoxication factors in establishing probable cause).

In essence, Steinlage asks this court to reweigh the evidence in this case and come to a different conclusion than the district court based on the explanations he offers. But that is not the standard we apply in our review. Instead, we must consider whether the district court's factual findings are supported by substantial competent evidence and whether these findings show the deputy had reasonable suspicion to believe Steinlage had been driving under the influence of alcohol.

The district court concluded Deputy Dalinghaus had reasonable suspicion Steinlage drove while under the influence of alcohol and thus could request a preliminary breath test. The evidence supports the district court's conclusion. Steinlage's slurred speech and imbalance, the hour of the accident, and the nature of Steinlage's actions after the accident (walking to his parents' house in the cold rather than calling for help) can all lead to reasonable inferences of impairment. Though Deputy Dalinghaus could not recall whether the alcohol containers found surrounding Steinlage's car were open, their presence suggests alcohol may have been a factor. These are reasonable inferences from the evidence presented. And they are sufficient to support the legal conclusion that Deputy Dalinghaus had reasonable suspicion to believe Steinlage had been driving his vehicle while intoxicated and articulable reasons to request a breath test.

Affirmed.