Walker, J.:
*394 The State appeals the district court's decision to grant Sergio Angel Arrizabalaga's motion to suppress evidence on the grounds that a state highway patrol trooper who stopped Arrizabalaga while he was driving on I-70 did not diligently pursue the purpose of the stop and that the stop was excessive in duration. The State argues that the district court abused its discretion by applying incorrect standards of law and that the district court erred when finding the trooper did not act diligently. But our review of the district court's analysis shows that the district court applied correct standards of law and thus did not abuse its discretion. Additionally, we find the court did not err when granting the motion to suppress because the trooper who stopped Arrizabalaga did not act diligently and did not reasonably pursue the purpose of the stop after he gained reasonable suspicion that Arrizabalaga was involved in drug activity. Thus we affirm the district court's decision.
FACTS
The stop and search of Arrizabalaga's vehicle
Around 9:45 p.m. on September 5, 2017, Kansas Highway Patrol Trooper Kyle Seiler initiated a traffic stop of Arrizabalaga's vehicle for following a tractor trailer too closely as he drove along I-70 near Salina. At the suppression hearing held later in this case, Seiler testified that he initially saw Arrizabalaga's van was travelling slower than most traffic on I-70, around 67 miles per hour, so *395 he started following it. While following, Seiler continued to observe the van and initiated the traffic stop when Seiler determined that Arrizabalaga was following a tractor trailer too closely. Seiler looked up the van's tag number when he initiated the stop. Seiler testified that Arrizabalaga slowed the van significantly in the driving lane before pulling off onto the shoulder of I-70, which seemed odd to him based on his experience in conducting traffic stops.
Seiler approached the van, shined his flashlight on the vehicle, and observed that the van was full of stacked cardboard boxes, large black bags, and a suitcase. As Seiler initiated contact with Arrizabalaga and the passenger, Seiler noticed a radar detector on the windshield, which he thought was odd because Arrizabalaga had not been speeding. Seiler also noticed a strong odor of "either cologne or air freshener, some sort of deodorizer" coming from inside the van. While at the van, Seiler asked for Arrizabalaga's driver's license and rental papers and inquired about Arrizabalaga's travel plans. Arrizabalaga told Seiler he was going to St. Louis to see family and friends.
Seiler requested Arrizabalaga to accompany him to his patrol car, and Arrizabalaga did so. Once they were in the patrol car, Seiler requested a driver's license check through dispatch and a criminal history check. While waiting on the results of these checks, Seiler asked Arrizabalaga more about his travel plans. Arrizabalaga told Seiler he was from Broomfield, Colorado, which Arrizabalaga said was about 20 minutes from where he rented the van in Denver. Seiler asked about the cargo in the van, which Arrizabalaga told him was for a surprise birthday party for the passenger in a few days.
Arrizabalaga continued to tell Seiler about his travel plans, providing that he and his passenger had stopped at an IHOP restaurant in Salina and wanted to keep driving until they could find a nice hotel like a Holiday Inn. Seiler testified that this struck him as odd because there is a Holiday Inn right next to the IHOP in Salina. Seiler then asked Arrizabalaga why the one-way rental was to be dropped off in Tallahassee, Florida, rather than their destination of St. Louis. Seiler asked Arrizabalaga if he was going to Florida, and he said no. Arrizabalaga told Seiler that he had two weeks off of work and was going to travel after stopping in St. Louis. He stated that the passenger was unaware of his travel plans and that Arrizabalaga was planning to fly back to Colorado.
The district court found that about eight and a half minutes elapsed until dispatch confirmed Arrizabalaga's driver's license was valid and provided his criminal history. Seiler printed off a warning ticket and told Arrizabalaga that was all he had for him. Arrizabalaga started to get out of the car, and Seiler asked him if he would answer more questions. Arrizabalaga consented, and Seiler began asking him about his criminal history. Arrizabalaga told Seiler he had been issued a citation for marijuana, but he had never been arrested, which was inconsistent with the information the dispatch had provided. Dispatch provided that Arrizabalaga had been charged with producing marijuana and a felony related to a stolen vehicle. Seiler then asked Arrizabalaga if he could search his van, and Arrizabalaga consented.
After he gave consent, Arrizabalaga and Seiler returned to Arrizabalaga's van, and Seiler asked the passenger to exit the van. At this time, Seiler told Arrizabalaga that he had reasonable suspicion but not probable cause to search the van. Arrizabalaga asked Seiler if he had a search warrant, and Seiler responded that Arrizabalaga had consented. Seiler told Arrizabalaga and his passenger that he was looking for large amounts of drugs and any personal use amounts would "go into the ditch." Arrizabalaga then revoked his consent to search the van.
After Arrizabalaga revoked consent, Seiler informed Arrizabalaga that he was calling for a drug dog, and if no dog was available then they would be free to leave. Seiler took the van keys from Arrizabalaga and called dispatch to find a dog. Dispatch advised there was no dog available, but a few minutes later Kansas Highway Patrol Lieutenant Scott Walker informed Seiler he had a dog and would come to the scene. Walker arrived approximately 24 minutes later. Walker's dog alerted within three minutes of Walker's arrival.
*396 A search of the van revealed 112 packages containing approximately 111.5 pounds of marijuana. Arrizabalaga was arrested, and the State charged him with one count each of possession with intent to distribute marijuana, possession of drug paraphernalia, and no drug tax stamp.
The first motion to suppress
Arrizabalaga filed his first motion to suppress on July 16, 2018, requesting that the court "suppress[ ] the items seized by law enforcement and any statements made by [Arrizabalaga] to law enforcement as the result of an unlawful detention and search and seizure." In this motion, Arrizabalaga argued that Seiler did not have probable cause to stop the van and did not have reasonable suspicion to detain Arrizabalaga. The district court held the first motion to suppress hearing a few days later and made an oral ruling at a separate hearing. The district court found that Seiler had reasonable suspicion for the initial traffic stop and that Seiler's questions about travel plans while processing the traffic infraction were appropriate and did not measurably extend the length of the stop. Regarding the voluntary exchange after the completion of the initial stop, the district court found that Arrizabalaga consented to additional questions and that the encounter became voluntary until he withdrew consent to search the van.
The district court provided a factual analysis of the totality of the circumstances for finding reasonable suspicion, including consideration of the cargo in the van, the odor of cologne or air freshener, and the rental agreement. The district court stated:
"If this was based solely on the initial observations made by Trooper Seiler, the Court would find this to be a very close case. Trooper Seiler did not see any air fresheners in the van and did not ask either occupant about the odor. And traveling to Missouri would not be a significant variation from traveling to Tallahassee from Denver using I-70.
"However, as noted the recent Kansas Supreme Court decisions, Seiler could ask additional travel questions in the course of pursuing the mission of the traffic stop without extending the length of the detention. A noticeable disconnect between the driver's explanation and the rental documents would warrant additional inquiry. That is what occurred in this case."
The district court detailed the further inquiry the trooper made. Then, the district court provided:
"As noted in a Tenth Circuit Court of Appeals case, quoted in the [State v. ] Schooler [, 308 Kan. 333, 419 P.3d 1164 (2018),] decision by the Kansas Supreme Court, lies, evasions, or inconsistencies about any subject while being detained may contribute to reasonable suspicion.
"This Court finds defendant's answers regarding his travel plans to be more than unusual or strange. The travel plan answers were inconsistent with the four-day [rental], thus they were a factor supporting reasonable suspicion.
"Then, after the encounter became voluntary, the defendant gave answers inconsistent with the criminal history information from dispatch. As stated in Schooler , criminal history alone cannot support reasonable suspicion, but in conjunction with other factors, criminal history contributes powerfully to reasonable suspicious calculus. Moreover, when the individual lies about having a criminal history, the inference of wrongdoing is all the more powerful.
"The Court finds, based on the totality of the circumstances, when the defendant withdrew his consent to search the van, there was objectively reasonable suspicion of other activities to extend the detention for the dog sniff. The motion to suppress is denied."
The second motion to suppress
About one month after the initial motion to suppress was denied, Arrizabalaga filed a second motion to suppress arguing that the length of the detention for the drug dog's arrival was too long and that his statements made to Seiler after searching the van were not voluntary.
At the second motion to suppress hearing, the State contended that officers could do *397 one of two things when using a drug dog during a traffic stop. In the absence of reasonable suspicion, an officer could run the dog during the traffic stop if it did not extend the original purpose of the stop in any measurable way. But if there was reasonable suspicion, then the State argued that an officer could detain Arrizabalaga long enough to bring in a drug dog. The State took the position that the reasonable suspicion framework of how long an officer can detain for a drug dog has been "sort of foreclosed under Rodriguez [v. United States , 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015) ], when [the United States Supreme Court] reaffirmed that you can't hold for any length of time, whether reasonable or not, if you don't have that reasonable suspicion." The State maintained that because the court had already found Seiler had reasonable suspicion of drug activity, "the length of detention, frankly, doesn't matter."
The district court took the arguments under advisement, and five days later the district court granted the second motion to dismiss and suppressed the results of the search and the statements made by Arrizabalaga after his arrest as fruit of the poisonous tree. The district court reviewed the State's interpretation of Rodriguez and disagreed "completely" with the State's position. During the oral pronouncement of the holding, the district court stated that relevant Kansas caselaw established a standard of diligence and reasonableness by law enforcement at all times, regardless of reasonable suspicion. The district court held:
"In this case Mr. Arrizabalaga and his passenger were held for approximately 24 minutes and on the tape there is nothing that occurs between-dealing with this case between Trooper Seiler's call in, to determine if a dog is available, and Trooper Walker's arrival with his dog 24 minutes later.
"The Court is going to find that that is not diligently and reasonably pursuing the purpose of the stop, that the stop was excessive in duration, and that, therefore, the results of that search should be suppressed, as requested by the defense."
The State timely filed an interlocutory appeal of this ruling.
ANALYSIS
When reviewing a district court's decision on a motion to suppress, we apply a bifurcated standard. First, we review the district court's factual findings to determine whether those findings are supported by substantial competent evidence. State v. Neighbors , 299 Kan. 234, 240, 328 P.3d 1081 (2014). Second, we then review the district court's ultimate legal conclusion drawn from the facts de novo. State v. Gibson , 299 Kan. 207, 215-16, 322 P.3d 389 (2014).
If the parties do not dispute the facts of the case, the question of suppression becomes exclusively a matter of law over which the court exercises unlimited review. State v. Stevenson , 299 Kan. 53, 57, 321 P.3d 754 (2014). Because the parties do not dispute the material facts of this case, our review of the district court's findings will be de novo. Whether the district court abused its discretion by applying an incorrect legal standard is a question of law. State v. Collins , 303 Kan. 472, 477, 362 P.3d 1098 (2015).
The State's argument on abuse of discretion
The State argues the district court abused its discretion because it applied an incorrect legal standard by misinterpreting caselaw when it made oral findings from the bench. We do not need to decide this argument since we review the district court's legal determinations de novo. Nevertheless, our own analysis as to whether the district court's legal determinations were correct convinces us that the district court did not apply incorrect legal standards.
The requirement for diligence and reasonableness for detention by law enforcement
The Fourth Amendment of the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. State v. Ramirez , 278 Kan. 402, 404, 100 P.3d 94 (2004). A routine traffic stop is a seizure under the Fourth Amendment, so it is subject to the constitutional requirement of reasonableness.
*398 State v. Smith , 286 Kan. 402, 406, 184 P.3d 890 (2008). To satisfy the reasonableness requirement, the scope and duration of a traffic stop and the circumstances that rendered its initiation must be strictly tied. State v. Thompson , 284 Kan. 763, 774, 166 P.3d 1015 (2007).
Traffic stops must be minimally intrusive and diligently pursued, and a law enforcement officer's actions must be reasonably related in scope to the circumstances that justified the initial interference. See United States v. Sharpe , 470 U.S. 675, 682, 686-87, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985). During a routine traffic stop, an officer may: (1) request the motorist's driver's license and vehicle registration, (2) conduct a computer check, (3) issue a citation, and (4) take steps reasonably necessary to protect the officer's safety. The stop can last only as long as necessary to complete those tasks, and the tasks must be diligently pursued. Thompson , 284 Kan. at 774, 166 P.3d 1015.
When a driver produces a valid license and proof that he or she may operate the vehicle, the driver must be allowed to proceed without being subject to further delay for additional questioning. To justify a temporary detention for further questioning or investigation, the officer must have reasonable and articulable suspicion of illegal transactions in drugs or another serious crime. State v. Anderson , 281 Kan. 896, 902, 136 P.3d 406 (2006). Reasonable suspicion requires something more than just a hunch, law enforcement must be able to find a particularized and objective basis for believing the person stopped is engaged in criminal activity. State v. DeMarco , 263 Kan. 727, 734-35, 952 P.2d 1276 (1998). Without reasonable suspicion to justify the extension of a completed stop, any further delay is unreasonable. See Rodriguez , 135 S. Ct. at 1615 ("An officer ... may conduct certain unrelated checks during an otherwise lawful traffic stop. But ... he [or she] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.").
The first motion to suppress
This appeal is different than most heard on this type of motion because the district court initially found at the first suppression hearing that Seiler had reasonable suspicion to further detain Arrizabalaga and ruled in favor of the State, denying the motion to suppress at which Arrizabalaga had argued only that the State illegally detained him because it lacked reasonable suspicion of illegal drug activity. This decision was not appealable. K.S.A. 2018 Supp. 22-3608. Thus, we need not and cannot question whether reasonable suspicion existed, and in deciding the second suppression issue we must rely on the district court's finding on the first motion that reasonable suspicion did exist. Instead, we must focus on the narrow issue litigated in the second motion to suppress-whether the trooper was not diligent enough in verifying or dispelling his suspicions after finding reasonable suspicion. See Sharpe , 470 U.S. at 685, 105 S.Ct. 1568.
The second motion to suppress
The State has the burden to demonstrate that a seizure following an officer's determination that reasonable suspicion existed was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. Florida v. Royer , 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Traffic stops have limitations. "[T]he investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." 460 U.S. at 500, 103 S.Ct. 1319.
To determine if officers have complied with limits, courts must "take into account whether the police diligently pursue[d] their investigation." United States v. Place , 462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). Specifically, courts should examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Sharpe , 470 U.S. at 686, 105 S.Ct. 1568.
*399 Because there is no Kansas caselaw directly addressing this specific issue, the district court relied on Kansas precedent that generally interprets the diligence standard. The Kansas Supreme Court analyzed the findings of Royer and applied them in Smith , which the district court relied on here. The district court particularly focused on one ruling in Smith and quoted the case during its oral pronouncement of its decision to grant the motion to suppress, stating: "To determine whether law enforcement officers have complied with the temporal limitation articulated for evaluating the propriety of a Terry stop, courts must 'take into account whether the police diligently pursue[d] their investigation.' " Smith , 286 Kan. at 410, 184 P.3d 890 ; see Terry v. Ohio , 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).
The State argues that the district court erred in relying on Smith because Smith is not factually similar to this case. The State's argument rests on the fact that the officer in Smith did not have reasonable suspicion to further detain the defendant after his initial stop; thus, the detention was limited to the scope of the initial seizure. This is a correct analysis of the Smith case generally, but the State incorrectly interprets the district court's reliance on Smith . The district court only relied on Smith to find that officers must be diligent at all times, regardless of whether reasonable suspicion to search further is present.
In ruling on the second motion to suppress, the district court acknowledged that there is only one Kansas appellate court case that discusses significant time delays and diligence by law enforcement in performing during a traffic stop seizure after the existence of reasonable suspicion by an officer. The district court analyzed State v. Coleman , 292 Kan. 813, 822-23, 257 P.3d 320 (2011), where the Kansas Supreme Court held that law enforcement had reasonable suspicion of criminal activity to justify a temporary detention to allow further investigation after the initial stop, but law enforcement had no reasonable and legal basis for detaining the defendant while officers waited for a parole officer to arrive at the scene.
In Coleman , the officer initially detained Coleman for a traffic stop but after conducting a driver check the officer learned Coleman was on parole. A parole officer requested the officer detain Coleman for a search. The parole officer arrived 35 minutes to an hour later and searched Coleman and the car. The search revealed that Coleman possessed cocaine. After Coleman filed a motion to suppress and then a motion to reconsider, the district court found that the police had reasonable suspicion justifying the search. The Kansas Supreme Court agreed but found the officer detained Coleman for the "sole purpose of providing a parole officer with enough time to arrive and conduct a search under the Kansas Department of Corrections' rules." 292 Kan. at 822, 257 P.3d 320. The court found:
"Because, as we determined earlier, [the officer] had reasonable suspicion of criminal activity that would allow him to expand the scope of his original stop, the limitation that the Kansas Department of Corrections self-imposed would not have prevented a detention for a reasonable time for a search within the scope of the initial stop. [The officer] did not, however, conduct an immediate search; he instead detained Coleman for at least 35 minutes while he waited for backup officers and, eventually, a parole officer to arrive." 292 Kan. at 822, 257 P.3d 320.
The court added: "An officer may not arbitrarily detain a driver in order to procure a drug-sniffing dog , and an officer my not arbitrarily detain a driver in order to obtain the presence of a parole officer. [Citation omitted.]" (Emphasis added.) 292 Kan. at 823, 257 P.3d 320.
Here, similar to Coleman , Trooper Seiler had reasonable suspicion to detain Arrizabalaga very quickly after the initial stop but did nothing about it. According to his testimony, Seiler had reasonable suspicion of drug activity throughout the initial 24 minutes of the traffic stop but never attempted to call for a drug-sniffing dog during that time.
On appeal, the State argues that Coleman does not provide legal support for the district court's ruling because the Coleman court does not "address the key point of the district *400 court's ruling here-that there is a time limit on how long an officer can hold a person for the arrival of a drug dog once reasonable suspicion of drug offenses has arisen." The State concludes that because Coleman does not address a time limit, the district court applied an incorrect legal standard.
Much like the State's argument against Smith , this is a correct analysis of the case generally, but the State's interpretation of the district court's reliance on that case is once again incorrect. The district court relied on Coleman to emphasize the requirement of diligence by law enforcement when detaining a person after finding reasonable suspicion of illegal activity. The State's contention that the "key point" of the district court's finding, which they interpret as finding that there is a time limit on how long an officer can hold a person for the arrival of a drug dog, is also incorrect. In its ruling the district court did not find that the detention was illegal because it was over a specific time limit. It merely determined that the facts showed that the trooper was not "diligently and reasonably pursuing the purpose of the stop" and that "the stop was excessive in duration."
The State argues that other cases have found "such length of detentions" to be legally appropriate. First, the State argues Sharpe applies here because Sharpe was detained for more than 20 minutes by an officer who had reasonable suspicion that Sharpe was involved in drug trafficking. See 470 U.S. at 679, 105 S.Ct. 1568. The Sharpe Court held that when assessing whether the length of a detention for an investigative stop is too long, "we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." 470 U.S. at 686, 105 S.Ct. 1568. The Court also found that establishing a per se rule that 20-minute detentions are too long is "clearly and fundamentally at odds with our approach in this area." 470 U.S. at 686, 105 S.Ct. 1568. The Sharpe Court found the detention to be reasonable. 470 U.S. at 687, 105 S.Ct. 1568. The State uses this excerpt from the Sharpe decision to support its argument:
"Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on Terry stops. While it is clear that 'the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion,' we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria. [Citations omitted.]" 470 U.S. at 685, 105 S.Ct. 1568.
The State appears to focus solely on the 20-minute timeframe at issue in Sharpe and the Court's decision to find the detention was reasonable-though the State's brief does not really develop this point. Nevertheless, the State's reliance is misguided because in Sharpe , and in this case, courts do not rely solely on the length of time the officers wait before they begin their search but instead specifically evaluate the diligence of law enforcement and the reasonableness of the detention.
We believe that the district court's decision here was completely in accord with the Sharpe Court's holding that a "bright line" rule for time is not appropriate. The district court never made a finding regarding the legal effect of the time elapsed in this case specifically and therefore this cannot be the issue on appeal. Further, the Sharpe Court emphasized that as a stop continues indefinitely, at some point an investigative stop can no longer be justified as such. We believe the district court here properly applied exactly the kind of analysis expected by the Sharpe Court and made the finding that, in the context of the facts of this case, the length of the stop was excessive. And while 48 minutes total time of detention was one of many facts presented to the district court at the second motion hearing, its ruling did not treat this particular time period as the lodestar which *401 necessarily controlled the outcome of the second suppression motion.
The State's primary authority on appeal is State v. Anderson , 281 Kan. 896, 903-04, 136 P.3d 406 (2006), where the Kansas Supreme Court found officers had reasonable and articulable suspicion that Anderson was involved in drug activity to justify the continued detention of Anderson after the conclusion of the traffic stop. The State argues the Anderson case is factually and legal similar to this case and should be controlling.
While the cases are factually similar, the legal analysis is much different. The Anderson court looked at several issues, none of which was the length of the detention after finding reasonable suspicion. The Anderson court held that law enforcement had reasonable suspicion to detain Anderson after completing the traffic stop, but its analysis ended there. The rest of the analysis centered on the existence of probable cause to arrest for drugs, probable cause to believe Anderson was a conditional release violator, and the sufficiency of the oral arrest and detain order. 281 Kan. at 904-12, 136 P.3d 406. The State argues that because the Kansas Supreme Court made no finding about the length of detention in Anderson -which was more than 35 minutes-then the court did not find it unlawful. This is not persuasive because the length of the detention and the diligence of law enforcement in detaining Anderson for 35 minutes was not argued or at issue on appeal. Ultimately the detention and search was considered unlawful but for reasons not related to the detention for the drug dog sniff. See 281 Kan. at 904-11, 136 P.3d 406.
A panel of our court has previously found a defendant's detention was unreasonably prolonged while waiting for a drug dog, even though the officer had reasonable suspicion that the vehicle may have contained controlled substances. State v. Jones , 47 Kan. App. 2d 866, 877, 280 P.3d 824 (2012), aff'd on other grounds 300 Kan. 630, 333 P.3d 886 (2014).
In Jones , the court found that the detention was "at least 20 to 30 minutes" and compared this to Coleman where it took 35 minutes for a parole officer to arrive. 47 Kan. App. 2d at 877, 280 P.3d 824 ; see Coleman , 292 Kan. at 822, 257 P.3d 320. That said, the duration of the stop was contested-as pointed out by Judge Buser in the dissent-and when Jones reached the Kansas Supreme Court, it did not consider this issue, deciding the case on reasonable suspicion grounds instead. Jones , 47 Kan. App. 2d at 878-79, 280 P.3d 824 (Buser, J., dissenting). Because the length of detention was disputed, the Kansas Supreme Court believed our court should not have made the finding regarding the length of time. Instead, it determined that the "lack of factual finding makes the majority's discussion suspect. The discussion was unnecessary and essentially dicta; therefore, we need not examine the merits of the majority's analysis." Jones , 300 Kan. at 648-49, 333 P.3d 886.
Thus, although Jones cannot be controlling, it is an example of when this court has previously found that an officer did not act diligently and reasonably when the officer detained a defendant for 20-30 minutes. The Jones case provides a relevant framework for analyzing this case because the panel of our court considered the issue of what constitutes diligence where reasonable suspicion existed.
As we have noted, law enforcement may detain a person after the completion of an initial traffic stop if they have reasonable suspicion that person is engaging in illegal activity, but law enforcement must continue to act diligently and detain only temporarily for no longer than necessary to effectuate the purpose of the investigatory stop. Smith , 286 Kan. at 410, 184 P.3d 890. In essence, and consistent with the State's argument to the district court that, in the wake of the U.S. Supreme Court's decision in Rodriguez , "the length of detention, frankly, doesn't matter," the State's brief appears to suggest that once an officer has reasonable suspicion during a traffic stop, the officer can further detain a person for as long as the officer would like. But caselaw advises otherwise. As we have observed, in Sharpe , the majority opinion states: "Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop." 470 U.S. at 685, 105 S.Ct. 1568.
*402 Our case stands in significant contrast to Kansas Supreme Court decisions which found an officer acted diligently when further detaining a defendant after finding the necessary reasonable suspicion of illegal activity. In a recent case, an officer initiated a traffic stop on I-70 and after speaking with the passengers and looking inside the vehicle the officer asked the driver to return with him to his patrol car. State v. Schooler , 308 Kan. 333, 336, 419 P.3d 1164 (2018). The officer testified that he suspected criminal activity as he left the vehicle and returned to his own. The officer texted for a drug dog about three minutes into the stop. While they were inside the car, the officer continued to act diligently. The officer questioned Schooler while reviewing Schooler's license, rental agreement, and other documents and entering Schooler's information into the officer's computer. The officer continued to act diligently while asking questions and getting criminal history information from dispatch for around 17 minutes. Around 18 minutes into the stop the officer told Schooler he was " 'good to go,' " and Schooler refused to answer any questions voluntarily. 308 Kan. at 339, 419 P.3d 1164. A drug dog arrived 11 minutes later and an eventual search found 38 pounds of marijuana. After a lengthy analysis of the officer's questioning and determining if the officer had reasonable suspicion, the Supreme Court found the officer had reasonable suspicion to detain further and that his actions were lawful. 308 Kan. at 356, 419 P.3d 1164.
Unlike the officer in Schooler , Trooper Seiler did not act diligently and did not reasonably pursue the purpose of the stop after he gained reasonable suspicion that Arrizabalaga was involved in drug activity. According to his testimony, Seiler thought the interaction was suspicious the moment he made contact. Among other things, the large number of moving boxes in the van, the strong smell of cologne, and the rental agreement were suspicious facts that were all present within the first moments of Seiler's contact with Arrizabalaga. After Seiler asked Arrizabalaga to come back to his patrol car, Seiler's suspicions grew as he believed Arrizabalaga's behavior and story were "odd." Seiler did not believe his explanation of his travel plans. If Seiler was suspicious, he could have attempted to dispel his suspicions or tried to locate a drug-sniffing dog immediately. The officer in Schooler texted for a dog three minutes into the traffic stop.
If Seiler would have attempted to locate a dog the moment he had a reasonable suspicion of drug activity, then perhaps this search would not be on appeal. But, Seiler did not attempt to dispel his suspicions until 24 minutes into the stop. Instead, he continued to ask additional questions which only made him more suspicious. Even after learning about Arrizabalaga's previous drug citations, Seiler proceeded only to issue Arrizabalaga a ticket for following too closely and tell him he was finished.
According to this testimony and the district court's findings, Seiler had all the information he needed at this point to have reasonable suspicion and request a drug dog. Still, Seiler did nothing. Finally, after 24 minutes of speaking with Arrizabalaga, Seiler asked permission to search Arrizabalaga's van. Arrizabalaga initially gave consent to search the van, but after inquiring into why Seiler wanted to search the van, Arrizabalaga revoked consent. Only after Arrizabalaga withdrew consent to search his van and the voluntary stop ended-becoming a detention-did Seiler seek to locate a dog. Moreover, Seiler told Arrizabalaga that if he could not find a dog, Arrizabalaga would be allowed to leave. This statement, in itself, shows a lack of diligence and commitment to the investigation on behalf of Seiler.
After Seiler told Arrizabalaga he would try to locate a dog, Seiler took the keys to the van from Arrizabalaga and made Arrizabalaga and his passenger wait in the van along I-70 for 24 more minutes. Seiler attempted to locate a dog, but none were available until Lieutenant Walker informed Seiler he could make the stop with his dog. This took around two minutes. For 22 minutes Seiler waited for Walker's arrival; he did not ask more questions or perform any other investigatory tasks.
If Seiler had reasonable suspicion during the initial stop, and the district court found that he did, then there were several opportunities *403 for him to actively seek the use of a dog within the scope of the initial stop or during the time of the consensual encounter. Just like in Schooler , this would have been a diligent and reasonable way to pursue the purpose of the stop. Instead, Seiler waited until he had no other option but to call for a dog which unreasonably extended the stop because of his lack of diligence and effectiveness in pursuing the purpose of the investigatory stop.
Under the standard of reasonableness and diligence of law enforcement and the little precedent as for what is diligent and reasonable when detaining a person after finding reasonable suspicion of illegal activity throughout an initial traffic stop, we conclude the district court did not err when granting the motion to suppress evidence. The State's claims fail because Trooper Seiler did not diligently and reasonably pursue the purpose of the stop after finding reasonable suspicion of illegal drug activity. Seiler did not attempt to locate a dog until after the stop had been going on for 24 minutes and Arrizabalaga had withdrawn his consent to search the vehicle. It took another 24 minutes for the dog to arrive and eventually perform a search. Substantial competent evidence supports the district court's finding that Seiler failed to diligently and reasonably pursue the purpose of the stop because he did nothing about his suspicion until the second 24-minute period began.
Affirmed.
* * *