NOT DESIGNATED FOR PUBLICATION

No. 121,783

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JEANNIE R. BULK,
*Appellee*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed April 10, 2020. Affirmed.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Jeffery S. Adam*, of Robinson Firm, LLC, of Manhattan, for appellee.

Before LEBEN, P.J., SCHROEDER, J., and LAHEY, S.J.

PER CURIAM:  On January 29, 2019, Jeannie R. Bulk was stopped for a traffic infraction. The district court ordered suppression of the evidence discovered in her vehicle following its search, finding the officer unconstitutionally extended the stop and the officer's testimony lacked credibility. The State timely filed this interlocutory appeal, arguing the district court improperly suppressed the evidence. After review, we find the district court's decision is supported by substantial competent evidence, and we affirm.

FACTS

Undersheriff Jim Bogart of Clay County was on duty with his certified drug dog. He executed a traffic stop on the car driven by Bulk because it was being operated with a

1

defective muffler. Bulk provided him with her license and vehicle registration. Back in the police vehicle, Bogart ran Bulk's license and registration but did not start writing her a ticket. Instead, he went back to the car and asked Bulk for consent to search the vehicle. She denied consent, and Bogart asked her to exit the vehicle while he deployed his dog to sniff the car. Shortly before the search, Officer Billy Smith of the Clay County Police Department was dispatched to the scene.

The dog alerted on the driver's side door, and Bogart searched the car. He searched the driver's seat area first, then the rear passenger compartment on the driver's side, before searching Bulk's purse and the driver's seat area a second time. About 10 minutes later, Bogart opened the vehicle's ashtray and discovered a glass smoking pipe wrapped in a paper towel. The glass pipe field-tested positive for methamphetamine. Bulk was arrested and charged with possession of methamphetamine and possession of drug paraphernalia.

Bogart was not wearing a body camera during the encounter, nor was his police vehicle equipped with a recording device. Smith, however, was wearing a body camera when he arrived just before Bogart started searching the car.

Bulk moved to suppress the evidence, arguing Bogart unlawfully extended the traffic stop without reasonable suspicion she had committed a crime other than operating a car with a defective muffler.

At the suppression hearing, Bogart testified when Bulk gave him her license and registration, he saw in plain view a clear glass tube wrapped in a paper towel sticking out of the vehicle's ashtray. Based on his training and 29 years of experience in law enforcement, Bogart said the item appeared to be a glass smoking pipe used as drug paraphernalia. Initially, Bogart testified he said nothing to Bulk about the item. But on cross-examination, defense counsel confronted Bogart with a prior inconsistent statement

2

from his report in which he claimed to have told Bulk he "believed that there was drug paraphernalia in the car." Bogart readopted the report statement and said, "If it's on the report, I did tell her that." Bogart testified he waited to tell Smith about the drug paraphernalia he saw in plain view until after he collected it.

Defense counsel admitted into evidence footage taken from Smith's body camera and played the video in court. When the footage starts, Bogart is walking towards the vehicle. Bogart has a discussion with Bulk, during which he can be heard asking, "Do you have anything illegal in the vehicle I should be aware of?" Bulk's response is inaudible. Bogart then asks Bulk for consent to search the vehicle, but their conversation after his request is muddled by background noise. Bogart does not tell Smith in the video about his suspicion the car contains drug paraphernalia.

Bogart said he did not immediately seize the drug paraphernalia because the evidence was under his control and was not going anywhere. He waited to seize the pipe because he was trained to search vehicles in a grid pattern, and he would stick to that method even if he had already seen something illegal.

Bogart admitted his request for consent and the use of the dog sniff were unnecessary because he had previously seen what appeared to be drug paraphernalia in plain view. He claimed the purpose of these additional measures was to confirm his suspicion there was drug paraphernalia in the vehicle.

The district court granted Bulk's motion, finding Bogart's testimony lacked credibility for the district court to believe Bogart saw the glass pipe in plain view when he first approached the car. The district judge remarked, "Obviously, if he'd seen drug paraphernalia, he had reasonable suspicion." But the district court found Bogart's actions did not align with his testimony on the matter, stating it had seen "so many videos of traffic stops over the years and . . . usually officers explain to the drivers why they're

3

being stopped, why they're being asked to get out. If they observe things, they usually inquire about them." The district court found it very unusual Bogart did not tell Bulk or Smith he had seen the smoking pipe in plain view and he "did not tell anyone at all until . . . after he placed the defendant under arrest after 13 minutes of searching . . . that there was drug paraphernalia." However, our review of the tape reflects the search lasted about 10 minutes, and we make this disclosure for purposes of clarity in the record. The district court went on to question why Bogart did not go "straight to the item he observed . . . was drug paraphernalia which would be the logical thing a person would expect somebody to do," or why Bogart asked for consent when he claimed to have plainly seen drug paraphernalia.

Finally, the district court adopted defense counsel's reasoning at the suppression hearing that (1) Bogart did not see the paraphernalia in plain view until after he started searching the car, and (2) Bulk's detention was therefore extended without the requisite reasonable suspicion.

After ruling on the motion, the district court gave both parties the opportunity to ask questions. Neither party had questions.

ANALYSIS

When a defendant moves to suppress evidence, the State has the burden to prove its search and seizure was lawful. In reviewing the granting or denial of a motion to suppress evidence, we first determine—without reweighing evidence or assessing witness credibility—whether the district court's factual findings are supported by substantial competent evidence. *State v. Sanders*, 310 Kan. 279, 285, 445 P.3d 1144 (2019). "'Substantial competent evidence is "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion."'" *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). Second, we review the district court's ultimate legal

4

conclusion de novo, without required deference to the lower court's decision. *Sanders*, 310 Kan. at 285.

Only the facts are at issue here. Accordingly, our review is limited to whether the district court's factual findings are supported by substantial competent evidence. The State argues the district court's findings indicating it did not believe Bogart are unsupported by the evidence.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. *State v. Williams*, 297 Kan. 370, 376, 300 P.3d 1072 (2013). "A routine traffic stop is a seizure under the Fourth Amendment, so it is subject to the constitutional requirement of reasonableness." *State v. Arrizabalaga*, 57 Kan. App. 2d 79, 86, 447 P.3d 391 (2019), *rev. granted* February 25, 2020. Depending on the circumstances, a search or seizure is generally "unreasonable" when it is accomplished without a valid warrant or without a recognized exception to the warrant requirement. *Sanders*, 310 Kan. at 285.

One exception to the warrant requirement is an investigatory detention, which allows an officer to stop and briefly detain an individual without a warrant as long as the officer has facts supporting a reasonable and articulable suspicion the individual is committing, has committed, or is about to commit a crime. 310 Kan. at 286; see *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Courts treat traffic stops like investigatory detentions. *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018). An investigatory detention must be justified from the start and reasonably related in scope to the circumstances supporting the seizure was lawful in the first place. *Terry*, 392 U.S. at 19-20. In the traffic-stop context, the duration of the officer's inquiry must be limited to the ordinary steps incident to the stop—such as

checking the driver's license and registration, running a computer check, and issuing a citation—and related safety concerns. See *Jimenez*, 308 Kan. at 323.

When the officer's mission exceeds the scope of a traffic stop, the officer must have reasonable suspicion or consent to further detain the individual. 308 Kan. at 323-24, 326; see *Rodriguez v. United States*, 575 U.S. 348, 354-55, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). "Reasonable suspicion is ''a particularized and objective basis' for suspecting the person stopped of criminal activity.'" . . . Reasonable suspicion is a lower standard than probable cause. 'What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.'" *State v. Lowery*, 308 Kan. 359, 366, 420 P.3d 456 (2018).

And when officers conducting a traffic stop unconstitutionally obtain evidence, suppression of the evidence may be warranted under a judicially created remedy known as the exclusionary rule, which allows courts to prevent the evidence from being used at trial. *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014).

Here, both parties agree when Bogart abandoned writing Bulk a ticket, he needed reasonable suspicion other than the reason for the initial stop to extend the encounter with the dog sniff. If the district court would have accepted Bogart's testimony that he observed a glass tube in plain view in the ashtray at the start of the encounter, it could have reasonably concluded Bogart had reasonable suspicion to extend the stop based on his training and experience as an officer. See, e.g., *State v. Morris*, 276 Kan. 11, 15, 72 P.3d 570 (2003) (officers had reasonable suspicion to further detain individual after they smelled chemical odor coming from inside vehicle and saw camp stove in plain view). As the district judge remarked, "Obviously, if he'd seen drug paraphernalia, he had reasonable suspicion."

But the district court's analysis shows it did not find Bogart's testimony on that point credible, finding Bogart (1) claimed to have seen the pipe but said nothing about it to Bulk or Smith until after he seized it; (2) asked for Bulk's consent to search the vehicle, which would have been unnecessary if he had seen the pipe; and (3) searched the car for 10 minutes before seizing the pipe. The district court found these facts very unusual based on the numerous traffic stop videos it had reviewed over the years.

The State argues each of these findings is unsupported by the evidence. But this argument lacks persuasion in light of the record as a whole. At first, Bogart testified he did not tell Bulk he had seen drug paraphernalia. He changed his testimony after being confronted with a contrary statement he had made in his report. And Bogart testified he did not tell Smith about the drug paraphernalia until after he collected it. The district court reviewed footage taken from Smith's body camera, which shows Bogart searching various areas of the car for about 10 minutes before arresting Bulk.

The State argues the district court incorrectly "based its conclusions on its personal view of what it believed to be standard police procedure." But "[a] court 'must judge the officer's conduct in light of common sense and ordinary human experience under the totality of the circumstances.'" *Jimenez*, 308 Kan. at 324. The district court properly relied on its common sense and experience when evaluating Bogart's credibility.

Overall, the State's real argument is the district court should have weighed the evidence and assessed Bogart's credibility differently. But we will not reweigh the evidence or disturb the district court's credibility determination of Bogart. See *Sanders*, 310 Kan. at 285. The State asks us to do so anyway, arguing the district court should have believed Bogart's statement in his report over his initial testimony that he did not tell Bulk about the drug paraphernalia and the district court should have accepted Bogart's reasonable explanation for the manner in which he searched the car. The district court clearly acted within its power when it weighed the evidence and found Bogart's actions

7

contradicted his testimony that he observed the pipe in plain view at the start of his contact with Bulk.

At the conclusion of the hearing, the district court expressly asked the parties if they had any questions. They both said no. The State could have asked for clarification on the district court's credibility finding and did not. And the State did not object to the district court's findings or lack of findings. Generally, a party must object to inadequate findings of fact to preserve the issue for appeal. See *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). When a party fails to object, we presume the district court "found all facts necessary to support its judgment." *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017). Here, the district court's finding on Bogart's credibility could have been clearer. However, we presume the district court found all facts necessary to support its holding Bulk's detention was extended without the requisite reasonable suspicion of Bogart having observed the glass pipe in plain view upon his initial contact with Bulk.

Affirmed.